UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **David V. Mann,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Washington Metropolitan Area Transit** )<br>**Authority (WMATA),** )<br>)<br>**Defendant.** )<br>) | Civil No. 13-cv-00120 (APM) |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this civil rights case, Plaintiff David Mann asserted that Defendant Washington Metropolitan Area Transit Authority (WMATA) terminated him unlawfully based on his race. The court granted summary judgment in favor of Defendant. *See* Mem. Op. & Order, ECF Nos. 41, 42. Thereafter, Defendant filed a Bill of Costs under Federal Rule of Civil Procedure 54(d)(1), seeking taxation of costs in the amount of $4,454.01 for "transcripts necessarily obtained for use in the case." Bill of Costs, ECF No. 44. Plaintiff then filed an "Opposition to Defendant's Bill of Costs or, in the Alternative, [a] Motion to Stay Enforcement of Award of Costs Pending Appeal." ECF No. 46 [hereinafter Pl.'s Opp'n.].

Defendant's Bill of Costs and Plaintiff's Motion to Stay Enforcement are now before the court. For the reasons explained below, Defendant's Bill of Costs is granted in part and denied in part, and Plaintiff's Motion to Stay is denied.

## II.   DISCUSSSION

### A.   Bill of Costs

#### 1.   *Plaintiff's objection to the bill of costs in its entirety*

The Supreme Court has observed that "Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs." *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013).  However, because Rule 54(b)(1) provides that costs "*should* be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1) (emphasis added), the rule makes "clear that the decision whether to award costs ultimately lies within the sound discretion of the district court," *Marx*, 133 S. Ct. at 1172 (citation omitted).  Although Rule 54(d)(1) confers discretion upon district courts, because of the presumption in favor of awarding costs, "federal courts have placed on the unsuccessful parties some burden of showing circumstances sufficient to overcome the presumption favoring the prevailing party." *Baez v. DOJ*, 684 F.2d 999, 1004 (D.C. Cir. 1982).  "The result is that trial judges have rarely denied costs to a prevailing party whose conduct has not been vexatious when the losing party has been capable of paying such costs." *Id.*

Plaintiff here does not dispute that Defendant was the "prevailing party."  Instead, citing a case from the Fourth Circuit, he argues that the court should deny costs because "'there would be an element of injustice in a presumptive cost award.'"  Pl.'s Opp'n at 3 (quoting *Ellis v. Grant Thorton LLP*, 434 Fed. Appx. 232, 235 (4th Cir. 2011)).[1]  Our Court of Appeals has not adopted an "element of injustice" standard like the one articulated by the Fourth Circuit.  But even if it had adopted such a standard, the factors that Plaintiff points to do not overcome the presumption in favor of awarding costs to Defendant.

---

[1] Although *Ellis* is an unpublished decision, the "element of injustice" standard it articulates derives from the published decision *Cherry v. Champion International Corporation*, 186 F.3d 442, 446 (4th Cir. 1999).

Plaintiff argues that the "limited value of the prevailing party's victory" and the "closeness and difficulty of the issues decided," *id.* (quoting *Ellis*, 434 Fed. App. at 235), "as well as his good faith in pursuing claims against Defendant under Title VII," *id.*, warrant the denial of Defendant's bill of costs. Plaintiff asserts that this was a "close" case that "offers little to no value" to Defendant; that the court's grant of summary judgment in Defendant's favor was premised on "a mischaracterization of the facts"; and that it would be unfair to "penalize a plaintiff who brought suit in good faith." *Id.* at 3-4. None of those arguments are convincing.

This was not a close case. The court conducted a detailed review of the record and found that Defendant, after undertaking a thorough investigation, terminated Plaintiff for a non-discriminatory reason, namely, he used excessive and unnecessary force in arresting a citizen. Plaintiff offered no direct evidence of discrimination, and his attempt to show discrimination through more favorable treatment of similarly situated officers of another race was unconvincing. Finally, Plaintiff has cited no case for the proposition that a good faith filing under Title VII relieves a non-prevailing plaintiff from the presumption that favors taxing of costs. The court, therefore, rejects Plaintiff's request to deny Defendant's Bill of Costs in its entirety.

    2.    *Plaintiff's objections to specific costs*

Plaintiff also objects to some of the specific costs that Defendant seeks. Namely, he objects to the costs of obtaining the deposition transcripts and associated exhibits for witnesses Ron Pavlik, Randolph Dawson, Shannon Bohrer, Jack Leeb, and Jerome Paige, because Defendant used none of the transcripts at a trial or to support its Motion for Summary Judgment. Pl.'s Opp'n at 5. Additionally, Plaintiff objects to the cost of Defendant obtaining copies of transcripts from a criminal trial proceeding in Prince George's County, Maryland, in which Plaintiff was criminally

charged for the conduct that led to his firing.  *Id.*  Plaintiff ultimately was acquitted of those charges.

Title 28 U.S.C. § 1920 permits taxation of costs for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  Whether a transcript was "necessarily obtained for use in the case" is determined as of the time the deposition is taken or when the transcript was ordered.  *Osseriran v. Int'l Fin. Corp.*, 68 F. Supp. 3d 152, 158 (D.D.C. 2014); *Guevara v. Onyewu*, 943 F. Supp. 2d 192, 197 (D.D.C. 2013).  The fact that a transcript is not ultimately used at trial or on the record is not "singularly determinative."  *Id.*  Rather, a party's use of a transcript meets the "necessarily obtained" standard if it is "used *to prepare for* future depositions, motions, pretrial proceedings, or trial."  *Sykes v. Napolitano*, 755 F. Supp. 2d 118, 120 (D.D.C. 2010) (emphasis added).

In response to Plaintiff's objections, Defendant counters that "it was clearly reasonable for WMATA's counsel to assume that the deposition transcripts of the Plaintiff, witnesses and experts would be necessary for use at the time the depositions were taken."  Def.'s Reply to Pl.'s Opp'n [hereinafter Def.'s Reply], ECF No. 48, at 2.  In particular, as to the trial transcripts of Plaintiff's criminal trial, Defendant states that obtaining those transcripts was necessary for use in the case because Plaintiff "heavily relied" upon the fact of his acquittal "as evidence in his favor."  *Id.*

The court finds that Defendant has carried its burden of showing that some of the transcripts were "necessarily obtained" for use in this case, but not others.  *See Robertson v. McCloskey*, 121 F.R.D. 131, 133 (D.D.C. 1988) (placing burden on party seeking costs).  As to the transcripts from Plaintiff's criminal trial, it is self-evident why Defendant acquired them:  to prepare for Plaintiff's deposition and his potential testimony at trial, as well as more generally to defend this case.  Indeed, obtaining the transcripts from Plaintiff's criminal case—which included testimony

4

from his use-of-force expert, Shannon Bohrer—would provide Defendant with invaluable insight into how Plaintiff planned to defend his actions in this case. It is also clear from the parties' summary judgment papers why Defendant obtained the transcripts from the depositions of Randolph Dawson and Shannon Bohrer. Captain Rudolph Dawson is the use-of-force instructor with whom Defendant's lead investigator, Deputy Chief Kevin Gaddis, conferred during his investigation into Plaintiff's use of force. Mem. Op., ECF No. 41, at 7. Dawson opined that Defendant had used excessive and unnecessary force in effecting the citizen's arrest. *Id.* Shannon Bohrer was Plaintiff's use-of-force expert. He testified at Plaintiff's criminal trial, and Plaintiff designated him as an expert in this case. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. [Pl.'s Summ. J. Opp'n], Ex. 2, ECF No. 38-2. It was reasonable for Defendant to obtain transcripts of Bohrer's and Dawson's depositions to prepare for briefing summary judgment and for trial.

The court reaches a different conclusion, however, as to the deposition transcripts of witnesses Ron Pavlik, Jack Leeb, and Jerome Paige. Defendant's Reply does not explain at all the roles of those persons in this case or why Defendant required their transcripts to prepare either for briefing summary judgment or for trial. Def.'s Reply at 5. It is simply not enough to say that those people were "witnesses." *Id.* The statute demands some explanation about the necessity of their testimony to the case, which Defendant has failed to offer. Therefore, the court will exclude from the Bill of Costs the fees associated with obtaining the transcripts of deponents Ron Pavlik, Jack Leeb, and Jerome Paige.

**B.     Plaintiff's Motion to Stay**

Plaintiff asks the court to stay enforcement of the Bill of Costs pending the outcome of appeal. The court declines to do so.

A stay pending appeal is an "extraordinary remedy." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). It is an "intrusion into the ordinary processes of administration and judicial review" and thus "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation and internal quotation marks omitted). The court considers four factors in evaluating a motion for stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (citation omitted). Although these factors are considered on a sliding scale, such that a strong showing of one factor may offset a relatively weaker showing on another, "[t]he first two factors . . . are the most critical." *Id.*; *see also Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 97 (D.D.C. 2011) (citing *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009), and *Cuomo*, 772 F.2d at 974). Here, Plaintiff has established neither of the first two factors.

The court starts with the second factor—irreparable harm. Plaintiff's argues that "WMATA is a government agency with disproportionately greater economic resources than that of Plaintiff Mann, a wrongfully terminated and under-employed police officer since November 2011." Pl.'s Opp'n at 9. It "is well-settled," however, "that economic loss does not, in itself, constitute irreparable harm." *Baker*, 810 F. Supp. 2d at 97. For economic loss to constitute irreparable harm, "legal remedies after the fact must be inadequate to restore the party seeking a stay to the status quo ante." *Id.* Plaintiff has not attempted to make such a showing, and he plainly cannot do so. If the Court of Appeals were to reverse this court's grant of summary judgment, Plaintiff could be made whole by return of the costs awarded. And notably, Plaintiff has made no attempt to make the requisite showing that he lacks the ability to pay due to financial hardship.

6

*See Guevara*, 943 F. Supp. 2d at 196 (stating that, "[w]hen a district court chooses to consider the unsuccessful party's financial hardship, 'it should require substantial documentation of a true inability to pay'") (quoting *Chapman v. Al Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000)).

Plaintiff also has not made a strong showing as to the second factor—the likelihood of success on the merits. Plaintiff argues that the court erred (1) in deciding as a matter of law, as opposed to submitting to a jury, that his proffered comparators were not similarly situated, and (2) in finding that Gaddis' investigation report was not biased. Pl.'s Opp'n at 7. As to Plaintiff's first argument, the court acknowledged the general legal principle that whether two employees are similarly situated is ordinarily a question of fact for the jury. Mem. Op. at 20. The court, however, closely scrutinized the record evidence and concluded that no reasonable jury could find that any of Plaintiff's proposed comparators had nearly identical employment situations to Plaintiff or had engaged in offenses similar to Plaintiff's. *See id.* at 15-21. That decision was within the court's authority and did not invade the province of the jury. *See Holbrook v. Reno*, 196 F.3d 255, 261-62 (D.C. Cir. 1999) (affirming the district court's decision on summary judgment that comparators were not similarly situated to Plaintiff).

As to Plaintiff's second argument—that the court erred in finding that Gaddis' investigation report was not biased—Plaintiff offers a list of factual errors made by the court. Pl.'s Opp'n at 8. None of these, taken individually or collectively, give rise to a strong likelihood of success on the merits.

First, Plaintiff asserts that the court was wrong to find that "Plaintiff never raised a specific concern with Gaddis" that Dowtin was on PCP, *id.* (quoting Mem. Op. at 26), because Plaintiff did make the statement during his interview with Gaddis, referring to the arrestee, "Now I'm thinking maybe PCP." Plaintiff correctly cites what he told Gaddis. *See* Pl.'s Summ. J. Opp'n,

Ex. 4, ECF No. 38-4, at 10:17. However, a single passing reference to "maybe PCP" in the course of a (once transcribed) 49-page-long interview hardly constitutes raising a "specific concern," especially given that Plaintiff concedes that he did not mention the citizen's suspected use of PCP in his written statement. But even considering Plaintiff's passing reference to PCP during his interview with Gaddis, the court's conclusion that Gaddis made no effort to conceal Plaintiff's statements is unaffected. Gaddis attached Plaintiff's entire statement, including the passing reference to PCP, to his report—a fact that Plaintiff does not contest. *See* Mem. Op. at 26.

Second, Plaintiff argues that the court "minimized" the fact that Gaddis did not include in his report that the citizen threw his shoes and socks into the street and cursed belligerently. Pl.'s Opp'n at 8. The court gave that fact adequate weight and consideration. The court acknowledged that there was no reference in the body of Gaddis' report to the citizen throwing shoes and cursing. It pointed out, however, that Gaddis had not attempted to bury, or "minimize," those facts, because they were contained in both Plaintiff's written and oral statements, which Gaddis attached to his report. Mem. Op. at 26.

Third, Plaintiff contends that the court erroneously stated that Gaddis had obtained a *written* statement from a civilian bystander who made the video of Plaintiff arresting the citizen "when it is clear in the report that he did not." Pl.'s Opp'n at 8. The court made no such error. To the contrary, the court recognized that "Gaddis . . . interviewed the person who recorded the arrest, but was unable to obtain a written statement from him." Mem. Op. at 5.

Fourth, according to Plaintiff, the court wrongly assumed that Gaddis had a transcript prepared of Plaintiff's interview when in fact that transcript was prepared at the request of Plaintiff for purpose of opposing Defendant's Motion for Summary Judgment. Pl.'s Opp'n at 9. Plaintiff is correct that the court made an erroneous assumption about the provenance of the interview

transcript. But that is hardly a material fact that would sway the balance in favor of denying of summary judgment.

Finally, Plaintiff argues that the court "ignored" the fact that Gaddis turned to an in-house use-of-force expert, Randolph Dawson, instead of an outside expert, and provided the expert only with a copy of the video of the arrest. Pl.'s Opp'n at 9. The court, however, recognized that Dawson was an in-house expert and was shown a video of the arrest. Mem. Op. at 7. The fact that Gaddis did not share additional information with Dawson does not change the court's conclusion that the investigation, in its totality, was not so "incomplete and unfair" as to constitute evidence of discrimination. *Id.* at 27.

## III. CONCLUSION

For the foregoing reasons, Defendant is awarded costs in the amount of $3,556.39. That sum excludes the fees incurred in obtaining the deposition transcripts and associated exhibits of Ronald Pavlik ($221.25), ECF No. 44 at 3; Jack Leeb ($521.28), *id.* at 9; and Jerome Paige ($155.10), *id.* Plaintiff's Motion to Stay is denied. A separate Order accompanies this Memorandum Opinion.

Dated: May 12, 2016

Amit P. Mehta
United States District Judge